**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

MALYDIA S. WILSON,            )
            )
         Plaintiff,     )
  vs.            )     No. 1:05-cv-1640-DFH-DML
            )
NICHOLE GILBERT, et al.,     )
            )
         Defendants.  )

**Entry Discussing Motion for Summary Judgment**

     Plaintiff Malydia S. Wilson ("Wilson") alleges in this civil rights action that she was the victim of constitutionally excessive force used during the course of her arrest on September 17, 2004, by defendants Nichole Gilbert ("Officer Gilbert") and Lt. M. Andrew Bonham ("Lt. Bonham"), officers of the Cumberland Police Department.

     The defendants seek summary judgment on the grounds that Wilson's claim is barred by the doctrines of *Heck v. Humphrey,* 512 U.S. 477 (1994), and collateral estoppel (issue preclusion), qualified immunity, and by the fact that their use of force was reasonable. For the reasons explained in this Entry, the motion for summary judgment (dkt 68) must be **granted** as to the first of these arguments, while the remainder need not be addressed.

**I. Background**

     A motion for summary judgment must be granted pursuant to Rule 56(c) of the *Federal Rules of Civil Procedure* "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson,* 477 U.S. at 248. A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.*

     Because Wilson is proceeding without counsel, the notice required by *Lewis v. Faulkner,* 689 F.2d 100 (7th Cir. 1982), was issued. Through this notice, Wilson was notified of the nature of the defendants' motion, of the proper manner in which to respond, and of the possible consequences of failing to respond. Wilson responded with a "motion in opposition to defendants' motion for summary judgment," with evidentiary materials, and with a "reply to brief in support of opposition to defendants' motion for summary judgment" (surreply).

Rule 56 requires more than bald assertions of the general matter asserted. *Drake v. Minnesota Mining & Mfg. Co.,* 134 F.3d 878, 887 (7th Cir. 1998). Affidavits must show affirmatively that the affiant is competent to testify to the matters stated therein and cite specific concrete facts establishing the existence of the truth of the matter asserted. FED.R.CIV.P. 56(e); FED.R.EVID. 602 (witness permitted to testify only to those matters about which he or she has personal knowledge). Affidavits which include legal argument and conclusory allegations without supporting evidence will not defeat a motion for summary judgment. *See Shank v. William R. Hague, Inc.,* 192 F.3d 675, 682 (7th Cir. 1999); *DeLoach v. Infinity Broadcasting,* 164 F.3d 398, 402 (7th Cir. 1999); *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir. 1985). The evidentiary materials which comply with the foregoing standards have been considered in addressing the defendants' motion for summary judgment and responses thereto, while the materials which do not comply with those standards have been disregarded.

## II.  Discussion

### A.  Findings of Undisputed Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the following facts are undisputed for purposes of the motion for summary judgment. The court has also viewed the disputed facts in the light most favorable to the nonmoving party, Wilson.

On September 17, 2004, at approximately 2:00 a.m., Wilson went to a Wal-Mart store. Lt. Bonham of the Cumberland Police Department was working as a part-time security guard at the store. Wilson states in her affidavit that at the time of the incident Lt. Bonham was in "dark clothing." Lt. Bonham overheard a manager being paged to the grocery area of the Wal-Mart. Lt. Bonham headed in the direction of the grocery and observed a Wal-Mart employee wave to him as if something was wrong. When Lt. Bonham arrived at the front of the store, he observed a Wal-Mart employee in the foyer area of the store along with another woman, only later identified as the plaintiff, Malydia Wilson. Wilson was holding bagged merchandise in each hand. The store employee was blocking Wilson in an attempt to keep her from leaving the store. The employee indicated to Lt. Bonham that Wilson was attempting to leave the store without paying for items. Lt Bonham attempted to obtain identification from Wilson, but she refused to identify herself. Lt. Bonham could detect a strong odor of alcohol coming from her.

Wilson turned away from Lt. Bonham and started to leave. Lt. Bonham reached out to take Wilson by the arm to prevent her from leaving. Lt. Bonham advised Wilson to stay where she was until things could be straightened out.  Lt. Bonham continued to follow Wilson in an effort get a hold of her.  Wilson kept yanking her arms from Lt. Bonham and walking away. Lt. Bonham called for back up on his radio and advised that he needed assistance.

When Wilson reached a 4-door sedan vehicle in the parking lot, she opened the rear door on the driver's side. Wilson states that Lt. Bonham pushed her and she then fell into the car. Lt. Bonham reached into the vehicle and tried to pull Wilson out. Wilson alleges

2

that Lt. Bonham pulled her neck, her arms and her legs. While Lt. Bonham was trying to remove Wilson from the backseat of the vehicle, Officer Gilbert arrived on the scene. She arrived in her marked Cumberland Police Department patrol car and her emergency lights were activated. She was in full police uniform. There was a male passenger in the front seat passenger side of the vehicle into which Wilson had fallen. That passenger was later identified as George Watson.

Officer Gilbert tried to help Lt. Bonham remove Wilson from the vehicle. Lt. Bonham disengaged from the struggle with Wilson at that time and moved to the other side of the vehicle, by the passenger door. The front passenger window was rolled up and the door was locked. Lt. Bonham repeatedly told the passenger (Watson) to show his hands, unlock the door and to get out of the car. Neither Wilson nor Watson complied with any of the verbal commands given by Lt. Bonham and Officer Gilbert. As Officer Gilbert continued in her attempts to pull Wilson out of the vehicle, Wilson punched her.

Wilson climbed into the front seat of the car. The front driver's side door was locked. Officer Gilbert reached in through the open back door and was able to unlock the front door. She then opened the front driver's side door. Lt. Bonham was unsuccessful in getting Watson to open the passenger's side door or getting him out of the vehicle. Lt. Bonham went back around to the driver's side of the vehicle. As he was doing so, the engine of the vehicle started. Officer Gilbert was standing in the area of the open door on the driver's side.

Both Lt. Bonham and Officer Gilbert told Wilson to turn the vehicle off, but she did not comply. Officer Gilbert then sprayed her Olio Resin (a.k.a. mace) at Wilson's face. Lt. Bonham positioned himself between Officer Gilbert and Wilson. Officer Gilbert stepped back. The vehicle went into reverse. Lt. Bonham had attempted to place his right foot on the brake. He instructed Wilson to shut the vehicle off. He also warned her not to put the vehicle in reverse. The vehicle started moving in reverse quickly. Lt. Bonham was not able to keep his footing and he was being dragged by the vehicle. As that was happening, Officer Gilbert was repeating her commands to Wilson to stop. Lt. Bonham was yelling, "stop" and "help me." Wilson then suddenly stopped, put the car in drive, and turned right to leave the parking lot. Officer Gilbert drew her service weapon and fired a shot at the vehicle and then fired a second shot. The parties dispute Lt. Bonham's position at the time the shots were fired.

Wilson then drove out of the parking lot as another police vehicle pursued Wilson who drove at speeds approaching 80 to 100 m.p.h. Ultimately, Wilson was brought to a stop. She had sustained two wounds from a single gun shot, entering on her side and exiting over the small of the back. She was taken to the hospital and released from the hospital six (6) hours later.

Wilson was charged, tried and convicted of Aggravated Battery against Lt. Bonham (Count II) (a Class B felony); Battery against Lt. Bonham (Count IV) (a Class D felony); Battery against Officer Gilbert (Count V) (a Class D felony); Criminal Recklessness against Lt. Bonham (Count III) (a Class C felony); two (2) counts of Resisting Law Enforcement (Counts VI and VII) (Class D felonies); and (Count VIII) Theft (a Class D felony). The trial

court merged counts III, IV, and VI into Count II and entered judgments of convictions on Counts II, V, VII, and VIII. Wilson subsequently appealed her convictions for Aggravated Battery, Battery, and Theft. Her convictions were upheld. A list of some of the charges against Wilson in the criminal case is attached as Appendix A.

### B.  Conclusions of Law

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." This provides the pertinent constitutional provision governing the claim against the defendants. *Graham v. Connor,* 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force--deadly or not--in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .").

A police officer's ability to make a stop or an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396. Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 395. *See Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 592-93 (7th Cir. 1997) (when an offender is resisting arrest, an officer can use that amount of force necessary to overcome the offender's resistance).

The defendants first argue that Wilson's excessive force claims are barred by the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994). "*Heck* bars any suit for damages premised on a violation of civil rights if the basis for the suit is inconsistent with or would undermine the constitutionality of a conviction or sentence." *Wiley v. City of Chicago,* 361 F.3d 994, 996 (7th Cir. 2004). "Should success in a civil suit necessarily imply the invalidity of a conviction or sentence, *Heck* requires the potential plaintiff to wait until his conviction is nullified before bringing suit." *Id.* "[A] plaintiff's claim is *Heck*-barred despite its theoretical compatibility with his underlying conviction if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction . . . ." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006); *see also VanGilder v. Baker*, 435 F.3d 689 (7th Cir. 2006) (*Heck* did not bar claim of excessive force even though plaintiff had been convicted of resisting a law enforcement officer where plaintiff did not deny his resistance nor challenge the factual basis for the conviction). *See also Apampa v. Layng,* 157 F.3d 1103, 1105 (7th Cir. 1998) ("The principle of *Heck* is that a civil suit which necessarily challenges the validity of the plaintiff's conviction cannot be maintained until and unless the plaintiff gets his conviction set aside, even if he does not seek in the civil suit a remedy that would undo his conviction."). If a successful civil action would not necessarily imply the invalidity of any criminal conviction against the plaintiff, the case should be allowed to proceed. *Heck*, 512 U.S. at 487.

The defendants argue that the facts giving rise to the claims for excessive force and the events leading up to Wilson's criminal convictions are inextricably intertwined and that, therefore, the excessive force claims are barred.  Defendants rely on a Sixth Circuit case for the "inextricably intertwined" standard. Under Seventh Circuit precedent, however, the test is whether "specific factual allegations in the complaint are necessarily inconsistent

4

with the validity of the conviction." *McCann*, 466 F.3d at 621. There are circumstances under which, for example, a plaintiff could not deny her resistance or challenge the factual basis of her convictions, even if the facts are inextricably intertwined, such that her excessive force claim would be allowed to proceed. The question here is, "If Wilson's excessive force claims were successful as alleged, would that necessarily imply the invalidity of any of her criminal convictions?"

The parties' versions of what occurred on September 17, 2004, are different in material respects. Wilson alleges in her complaint that the officers "used excessive force without a cause" and that they "fought me, maced me, shot me in my back. I was shot for no reason." She alleges that she "was accused of things that have not be [sic] proven and if anything has been shown it's not without a reasonable doubt. The law enforced 8 different counts without proof."

More specifically, Wilson alleges in her complaint that she went into the Wal-Mart to exchange some Pampers. This necessarily conflicts with her conviction of theft of Pampers and baby wipes. In addition, Wilson states in her affidavit that Lt. Bonham never identified himself to be security or a police officer. She asserts in her affidavit and in her response to the summary judgment motion that Lt. Bonham wore "dark clothing," while Lt. Bonham states that he was in "full police uniform." The elements of resisting law enforcement recited in the criminal case Information and Final Instructions pursuant to Ind. Code § 35-44-3-3 were that Wilson knowingly or intentionally fled from a law enforcement officer *after the officer had, by visible or audible means, identified himself* and ordered Wilson to stop, and while committing such offense Wilson did inflict bodily injury, that is: abrasions, contusions and physical pain on Lt. Bonham. Wilson's contrary version of whether Lt. Bonham was identified as a police officer directly conflicts with her conviction of resisting law enforcement. She could have said nothing about Lt. Bonham's clothing in this case, but instead she chose to include that in her sworn statement. "The question for us, then, is not whether [Wilson] *could have* drafted a complaint that steers clear of *Heck* ([s]he could have), but whether [s]he did." *McCann*, 466 F.3d at 622.

Reviewing the claims against each defendant, Wilson alleges that Lt. Bonham used excessive force when he fought her trying to pull her out of the car, grabbed her around the neck, pulled her arms and pulled her legs. She alleges that Officer Gilbert used excessive force when she maced Wilson in the face and when she fired shots at Wilson without cause.

Pivotal discrepancies between the parties' versions of what occurred include at what point Officer Gilbert shot her gun at Wilson's car.[1] Wilson alleges she was shot for no

---

[1]There was testimony during the trial relating to the timing of Officer Gilbert's gun shots. The jurors asked a question of a witness, Carol Gonzales, co-manager at Wal-Mart on duty the night of the incident.  They asked, "When Officer Gilbert shoots, is that when the car stopped?" Gonzales responded, "No. She [Officer Gilbert] shot, shot and then Andrew [Lt. Bonham] got - - Andrew slid off and then she [Wilson] kept going. There was no - - I mean, it went for - - the whole time the car is moving. The car was in motion when the officer shot twice because

reason, *after* Lt. Bonham was free from the car. The defendants contend that Wilson was dragging Lt. Bonham with her car, endangering his life, refusing to stop the car when the shots were fired.[2] They assert in affidavits that the shots were fired before Lt. Bonham broke free from the car. It was based on the facts as presented by the defendants, which Wilson disputes, that Wilson was convicted of aggravated battery, criminal recklessness, battery, and resisting law enforcement, and upon which those convictions were affirmed. *See Wilson v. State,* 835 N.E.2d 1044, 1047-1048 (Ind. Ct. App. 2005) (reciting that Wilson kicked Lt. Bonham several times in the groin while he was trying to remove her from the car; that when Officer Gilbert reached inside the car to pull Wilson out, Wilson punched her in the right arm; that because Wilson was combative with the officers, Officer Gilbert sprayed her with mace; that after Lt. Bonham interjected himself between Officer Gilbert and Wilson, he demanded that Wilson shut off the vehicle and forbade Wilson from putting the car into reverse, but the car began to back up very quickly; that Lt. Bonham fell to the ground and became trapped underneath the car-i.e., his left foot and right shoulder were somehow up underneath the car and his hand was either on the rocker panel of the car or the bottom of the seat; that once Officer Gilbert realized that Lt. Bonham was unable to break free from the car, she drew her weapon and fired two shots into the vehicle, striking Wilson; that it was after the second shot that the vehicle abruptly changed directions, doing a "J-turn," and Lt. Bonham pushed away from the car as hard as he could, but became lodged underneath the driver's door-which had remained open-and the pavement; and that Wilson continued driving the vehicle and eventually, Lt. Bonham became loose from the car, and ended up face down on the pavement, having sustained a severely dislocated right shoulder, abrasions to his elbow, and contusions to his left shoulder).

Wilson's version of the incident necessarily implies that her convictions were unlawful. In essence, Wilson claims that she was not behaving in any manner that would justify the use of force by either officer. She contends that a misdemeanor crime was escalated into felonies because of the officers' continued attempts to remove Wilson from the car and use an unreasonable amount of force. She argues that the officers should have simply let her leave the scene and called in a description of her car for other officers to pursue. The defendants would understandably take the position, as is supported by Wilson's conviction for resisting law enforcement, that Wilson should have simply stopped before reaching the car as ordered to prevent any further escalation of events. Although it is clear that Wilson disagrees with how the matter was handled at the scene, such disagreement does not avoid the barrier imposed by *Heck.* Indeed, it is Wilson's insistence on pressing her view of the facts which is contrary to those found at trial and on appeal that compels the conclusion here that her excessive force claims are barred by *Heck. See Okoro v. Callaghan,* 324 F.3d 488, 490 (7th Cir. 2003) (As "master of his ground," if a plaintiff makes allegations that are inconsistent with his valid convictions, *"Heck* kicks in and bars his civil suit."). Wilson's allegations and sworn statements present facts that are

---

Andrew Bonham was still being drug.  He was still hooked on."  (Tr. 126).

[2]A more complete discussion of the parties' sworn statements is attached as Appendix B.

6

inconsistent with and necessarily imply the invalidity of her underlying criminal convictions. Accordingly, her claims of excessive force are barred by *Heck* unless and until her convictions are set aside. The court need not address the other grounds on which the defendants seek summary judgment.

### III.  Conclusion

The defendants' motion for summary judgment (dkt 68) is **granted**. Judgment consistent with this Entry shall now issue. The dismissal shall be without prejudice, so that if the *Heck* bar is removed at some future time, Wilson's claims will accrue and could be asserted in an appropriate forum.

So ordered.

_David F. Hamilton_
_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:   12/2/2008